**UNITED STATES of America,
Plaintiff,**

v.

**Walter O. HEINZE  et al., Defendants.**

**Crim. A. No. 2238.**

United States District Court,
D. Delaware.

July 16, 1973.

48

Ralph F. Keil, U. S. Atty., and Richard D. Levin, Asst. U. S. Atty., Wilmington, Del., Daniel H. Cochrane, Sp. Asst. U. S. Atty., Philadelphia, Pa., and Gerald A. Toner, Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, Del., Abraham G. Levin and Max Wild, of Rubin, Wachtel, Baum & Levin, New York City, of counsel, for defendant Walter O. Heinze.

H. Albert Young and Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., and Edward Brodsky and Leonard Sharenow of Goldstein, Shames & Hyde, New York City, of counsel, for defendant Máxwell D. Feller.

S. Samuel Arsht, Walter L. Pepperman, 2nd and Robert F. Stewart, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Morton J. Schlossberg, New York City, of counsel, for defendant D. Irving Obrow.

Charles F. Richards, Jr., Thomas P. Sweeney, David S. Swayze and Robert Meyer, of Richards, Layton & Finger, Wilmington, Del., for defendant Frederick W. Andrews.

OPINION AND ORDER

LATCHUM, District Judge.

This case [1] is before the Court on the defendants' motion to dismiss a four-count indictment returned against them on March 21, 1972 by the Grand Jury for the District of Delaware.[2]

The Government contends in its brief and at oral argument that Count 1 of the indictment charges the defendants Walter O. Heinze ("Heinze"), Maxwell D. Feller ("Feller"), Frederick W. Andrews ("Andrews") and D. Irving Obrow ("Obrow") with a conspiracy to defraud the United States, to violate 29 U.S.C. § 439(a), to violate 26 U.S.C. § 7206(2) and to violate 18 U.S.C. § 1001, all in violation of the conspiracy statute, 18 U.S.C. § 371. Counts 2 and 3 charge Heinze, Feller and Obrow with substantive violations of 26 U.S.C. § 7206(2). Count 4 charges Obrow with a substantive violation of 29 U.S.C. § 439(a).

The defendants' motions assert several grounds for dismissal of each count of the indictment. The Court will treat the motions on each count *seriatim.*

## I. *Count 1.*

As stated above, the Government contends that Count 1 charges a four-fold conspiracy on the part of the defendants. Paragraph 1 of Count 1 charges that Heinze, Feller, Andrews and Obrow along with W. Stewart McDonald (now deceased) and Thomas A. Knowlton (not indicted) did conspire:

> "To willfully defraud the United States of and concerning the exercise of its governmental function and right of ascertaining, computing, assessing, levying, and collecting income taxes due and owing to the United States of America by concealing and misrepresenting to officers, employees, and agencies of the United States of America, including the Internal Revenue Service, the true nature and purpose of monies paid by International Latex Corporation, a Delaware Corporation and its successors to Thomas A. Knowlton, a Labor Consultant, for information concerning the activities of labor organizations involved with and attempting to become involved with International Latex Corporation, its successors and subsidiaries, as prohibited by 29 U.S.C. § 186(a) during the corporate fiscal years ending August 26, 1959, up to and including August 27, 1967, in violation of 26 U.S.C. § 7206(2).

\*   \*   \*   \*   \*   \*

> "All in violation of 18 United States Code, 371."

The defendants have moved to strike Paragraph 1 on the grounds that it fails to adequately charge a conspiracy to violate 26 U.S.C. § 7206(2), and also that it amounts to mere surplusage since Paragraph 2(b) of Count 1 also charges a conspiracy to violate § 7206(2). At oral argument the Government stated that Paragraph 1 intended to charge a conspiracy generally to defraud the United States of its right to determine and collect income taxes and that it did not intend to charge a conspiracy to violate § 7206(2).

18 U.S.C. § 371 reads in pertinent part:

> "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The statute proscribes not only conspiracies to commit an offense under another Federal statute, but also "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government." Haas v. Henkel, 216 U.S. 462, 479, 30 S.Ct. 249, 254, 54 L.Ed. 569 (1910). Therefore, a defendant can be

---

1. For prior proceedings in this case, see 350 F.Supp. 1103 (D.Del.1972).

2. Defendant Frederick W. Andrews was named in Count 1 only. D. Irving Obrow is the only defendant charged in Count 4.

**50**

charged with a conspiracy in violation of 18 U.S.C. § 371 without charging an underlying substantive offense that is proscribed by another Federal statute. However, because of the breadth of the general conspiracy portion of § 371, any indictment returned thereunder must be carefully drawn to ensure that the offense charged is clearly stated. Dennis v. United States, 384 U.S. 855, 860, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

Turning to the language of Paragraph 1, a fair reading does not sufficiently disclose that the defendants are charged with a general conspiracy to defraud the United States. The specific reference "in violation of 26 U.S.C. § 7206(2)" clearly makes it appear that the defendants are charged with a conspiracy to violate 26 U.S.C. § 7206(2).

■ The Government's explanation at oral argument of what it considered to be the true import of the paragraph will not cure an indictment which is unclear on its face. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L. Ed.2d 240 (1962). Until oral argument, the Court itself shared the defendants' misconception of the thrust of Paragraph 1. Clearly Paragraph 1 of Count 1 fails to adequately apprise the defendants of the nature of the accusation against them with reasonable certainty and will therefore be dismissed as violative of the basic principles of fundamental fairness embodied in the modern concept of pleading and specifically Rule 7(c), F.R.Crim.P.

Paragraph 2(a) of Count 1 charges that the four defendants did conspire to commit:

"the crime of willful failure on the part of Walter O. Heinze and D. Irving Obrow in their capacity as President and Treasurer, respectively, to file a report on behalf of the said International Latex Corporation, and its successors, with the Secretary of Labor concerning payments to Thomas A. Knowlton, a Labor Consultant, for the fiscal years ended August 28, 1959; August 27, 1960; August 26, 1961; August 25, 1962; August 31,

1963; August 29, 1964; August 28, 1965; August 27, 1966; and August 26, 1967, as required by Section 433(a) of Title 29, United States Code, in violation of Section 439(a) of Title 29, United States Code.

\*    \*    \*    \*    \*    \*

"All in violation of 18 United States Code 371".

■ The defendants contend that Paragraph 2(a) standing alone is insufficient to charge a conspiracy to violate 29 U.S.C. § 439(a). This Court has held that the overt acts set forth in a conspiracy indictment may be referred to in order to clarify the charging paragraphs. United States v. Borland, 309 F.Supp. 280 (D.Del.1970). However, even when the "means and manner" paragraphs and the overt acts alleged in the indictment are taken into consideration, the charging paragraph of 2(a) still does not sufficiently apprise the defendants of the charge which they must be prepared to meet.

29 U.S.C. § 439(a) provides that "any person who willfully violates this subchapter [which includes § 431 to § 440] shall be fined not more than $10,000 or imprisoned for not more than one year, or both."

29 U.S.C. § 433(a), referred to in Paragraph 2(a) of Count 1, requires employers to report certain dealings and expenditures to the Secretary of Labor. § 433(a)(1) requires reporting payments made to any labor organization or representative or employee of any labor organization with certain exceptions not here material; § 433(a)(2) requires that an employer report payments made to any of his employees to persuade any other of his employees not to organize or bargain collectively; § 433(a)(3) requires the employer to report any expenditure whose object was to interfere with the employee's right to organize and bargain collectively; § 433(a)(4) requires an employer to report any arrangement with a labor relations consultant whereby the consultant undertakes to influence employees as to organizing and bargaining collectively, or un-

dertakes to supply the employer with information concerning the activities of employees and labor organizations in connection with a labor dispute involving such employer.

■ Therefore, each subsection of § 433(a) refers to distinct and different types of employer activity. Even when Count 1 is read as a whole, Paragraph 2(a) thereof could conceivably be referring to activity required to be reported under either § 433(a)(1) or § 433(a)(3). Since overt acts 21 and 22 refer to payments made by Knowlton to officials of the International Brotherhood of Electrical Workers, the charging paragraph could possibly refer to payments to a representative of a labor organization required to be reported by § 433(a)(1). Since the purpose of such payments would be to induce the union not to organize the employees of International Latex Corporation, they could be regarded as an expenditure whose object was to interfere with the employees' right to organize and bargain collectively, requiring reporting under § 433(a)(3). In its brief, however, the Government contends that the Grand Jury intended to charge a violation of the reporting requirement of § 433(a)(4) because an agreement was made with Knowlton for the purpose of obtaining information concerning the activities of labor organizations. However § 433(a)(4) only requires a report on arrangements to obtain information concerning the activities of a labor organization *in connection with a labor dispute* involving the employer. Nowhere in Count 1 is there any allegation that International Latex Corporation was involved in a labor dispute. Paragraph 2(a) of Count 1 will therefore be dismissed as insufficient not only because it fails to inform the defendants of the particular subsection of § 433(a) that was violated, but also because it fails to allege the essential elements of the subsection that the Grand Jury intended to charge the defendants with violating.

Paragraph 2(b) of Count 1 charges that the four defendants conspired to commit:

"the crime on the part of Walter O. Heinze, Maxwell Feller, D. Irving Obrow, and Frederick W. Andrews, Defendants, and W. Stewart McDonald, Co-conspirator, of wilfully aiding and assisting in procuring, counselling, and advising the preparation and presentation under the Internal Revenue Laws of income tax returns of Stanley Warner Corporation, a New York Corporation (of which International Latex Corporation was then a wholly owned subsidiary) for the fiscal years ended August 28, 1959; August 27, 1960; August 26, 1961; August 25, 1962; August 31, 1963; August 29, 1964; August 28, 1965; and August 27, 1966, which were false and fraudulent as to material matters, in violation of Section 7206(2) of the Internal Revenue Code (26 U.S.C. § 7206(2))．

\* \* \* \* \* \*

"All in violation of 18 United Code, 371".

Here again the defendants move for dismissal on the ground that the charging paragraph does not sufficiently apprise the defendants of the offense charged. However, when Paragraph 13 is read in conjunction with Paragraph 2(a), the defendants are sufficiently apprised of the charge against them. Paragraph 13 reads as follows:

"It was a further essential part of the conspiracy that the Defendants Walter O. Heinze, Maxwell Feller, D. Irving Obrow, and Frederick W. Andrews and Co-conspirator W. Stewart McDonald did cause false entries to be made in the books and records of the said International Latex Corporation and its successors during the period August 28, 1959, through September 16, 1966, concerning the payments, totalling Four Hundred Forty-Six Thousand Five Hundred Dollars ($446,500) made to the said Thomas A. Knowlton, which false entries were in turn reflected as business deductions in the consolidated corporate income tax returns filed on behalf of the then parent corporation of International Latex

**52**

Corporation and its successors to wit: Stanley Warner Corporation for the fiscal years ended August 28, 1959; August 27, 1960; August 26, 1961; August 25, 1962; August 31, 1963; August 29, 1964; August 28, 1965; and August 27, 1966."

██ Thus, Paragraph 2(b) of Count 1 adequately charges a conspiracy to violate 26 U.S.C. § 7206(2) by providing all the elements of the offense and by providing an adequate statement of the charges against them.

This does not end the matter because the defendants next argue that the payments made to Knowlton were properly taken as business deductions so that the returns of Stanley Warner Corporation which deducted the payments to Knowlton as business expenses for the years in question were not materially false and fraudulent as a matter of law. Therefore, defendants argue, their assistance in preparation of the corporate income tax returns was not violative of 26 U.S.C. § 7206(2).

The Government's response is that the payments were prohibited by federal law and that any payments which were themselves illegal could not be deducted as "ordinary and necessary expenses" under 26 U.S.C. § 162(a). More specifically the Government claims that the payments to Knowlton were prohibited by 29 U.S.C. § 186(a)(2) which makes it unlawful for any employer or labor relations consultant of an employer to pay money to any officer of a labor organization which represents, seeks to represent, or would admit to membership any of the employees of such employer. The Government contends that since it is established that *illegal* payments may not be taken as ordinary and necessary business expenses, the deductions of such payments as business expenses on the corporate tax returns were materially false and fraudulent.

The defendants' position is that the payments made to Knowlton were not prohibited by § 186(a)(2), but assuming *arguendo* that such payments were pro-

hibited and illegal, they were nonetheless deductible as ordinary and necessary business expenses.

Since the defendants have not been charged with a substantive violation of 29 U.S.C. § 186(a)(2), nor a conspiracy to violate 29 U.S.C. § 186(a)(2), the elements of that offense need not be spelled out in the indictment. Whether or not the payments were prohibited by 29 U.S.C. § 186(a)(2) is a question of fact which the Government would be required to prove at trial. The Court need not decide at this time whether or not the payments were in fact prohibited and illegal.

However, the Court can determine whether or not the payments to Knowlton were deductible, assuming that they were illegal. The Court finds, upon such an assumption, that the payments would not be deductible. The defendants place great reliance on Commissioner of Internal Revenue v. Sullivan, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559 (1958) where the Supreme Court sustained the allowance of a deduction for rent and wages paid by the operators of a gambling enterprise, even though both the business itself and the specific rent and wage payments there in question were illegal under state law, and Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), where the Court sustained the allowance of a deduction for expenses incurred by a taxpayer in the unsuccessful defense of a criminal prosecution.

On the other hand, in United States v. Gilmore, 372 U.S. 39, 49, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963), the Court observed that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal'" within the meaning of 26 U.S.C. § 162(a). Likewise the term necessary requires only that the expense be "appropriate and helpful" for "the development of the [taxpayer's]

business". Welch v. Helvering, 290 U.S. 111, 113, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Also "ordinary" only refers to expenses distinct from capital expenditure. Welch, supra at 113–116, 54 S.Ct. 8. The alleged payments in the instant case find their source in the business in which the corporation was engaged. The expenses were ordinary, not capital, and the corporate officers could logically believe that the exclusion of a union organization from the employees of the corporation would be (legal considerations aside) appropriate and helpful for the development of the business. Thus, it would appear that the expenditures meet the requisites of an ordinary and necessary business expense deductible under 26 U.S.C. § 162(a). One judicially created exception to deductibility, however, arises where allowance of the deduction would "frustrate sharply defined national or state policies proscribing particular types of conduct." Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171 (1943). Here, the policy of § 186(a)(2), prohibiting such payments, would be frustrated by allowing the corporation to fully deduct them. The "policies frustrated must be national or state policies evidenced by some governmental declaration of them." Lilly v. Commissioner of Internal Revenue, 343 U.S. 90, 97, 72 S.Ct. 497, 501, 96 L. Ed. 769 (1952). The governmental declaration here is clear from the fact that such payments are declared illegal by specific statute. "The test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction" Tank Truck Rentals, Inc. v. Commissioner of Internal Revenue, 356 U.S. 30, 35, 78 S.Ct. 507, 510, 2 L.Ed.2d 562 (1958), "Certainly the frustration of state policy is most complete and direct *when the expenditure for which deduction is sought is itself prohibited by statute.*" *Tank Truck Rentals,* supra at 35, 78 S.Ct. at 510. (Emphasis supplied.) In *Tank Truck Rentals* the Court disallowed a deduction for a fine or penalties imposed by the state for an illegal act on the ground that the frustration of state policy would be severe, in fact *only slightly less remote* than the situation where the expenditure itself is prohibited by statute. Thus, it is clear that a payment, illegal in itself, is not deductible as an ordinary and necessary business expense as a matter of policy.

The Court therefore refuses to dismiss the charging Paragraph 2(b) of Count 1 on the ground that the payment to Knowlton was properly deductible as a matter of law assuming the payments were illegal as the Government contends because prohibited by 26 U.S.C. § 186(a)(2).

Nevertheless, the defendants seek dismissal of the charge in Paragraph 2(b) on the ground that since there is a substantial question as to deductibility of the payments the defendants should not be held criminally responsible for choosing to deduct the expenditure as a business expense. This, however, goes to the question of willfulness and is a matter for a jury to decide. The Court is unable to decide as a matter of law that the defendants' conduct was not willful.

Finally, the defendants seek to dismiss Paragraph 2(b) on the ground that on its face the charges of alleged conspiracy to violate 26 U.S.C. § 7206(2) are time-barred. The Court agrees. 18 U.S.C. § 3282, which applies a five year limit on prosecution on non-capital offenses, is, by its terms, inapplicable where special limitation periods are otherwise expressly provided. 26 U.S.C. § 6531 provides a three year limit on prosecution for offenses arising under the internal revenue laws unless the offense fits into eight stated exceptions for which the time limit is six years.

The defendants are charged in Paragraph 2(b) with having conspired to make false entries as business deductions on the corporate income tax return of Stanley Warner Corporation for eight consecutive fiscal years, the last one being filed on August 27, 1966. Since the alleged illegal object of the conspir-

54

acy was to make a return which was false and fraudulent as to illegal matters and not to conceal their actions at least as the indictment is presently drawn,[3] the last overt act constituting the conspiracy occurred on August 26, 1966, and the applicable statute of limitations runs from that date. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

Therefore, if the general limitation rule of three years under § 6531 is applicable, the offense charged in Paragraph 2(b) is clearly time-barred. If, however, the applicable time period is within one of the enumerated exceptions in § 6531, the offense would not be time-barred, since the indictment was returned within 6 years of the last alleged overt act. § 6531(8) provides a six year limit on prosecution "for offenses arising under section 371 of Title 18 of the United States Code where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof." The defendants in Paragraph 2(b) are charged with a *conspiracy* to violate 26 U.S.C. § 7206(2) which makes it a crime to willfully aid or assist in preparation or presentation of an income tax return which is fraudulent or false as to any material matter.

The issue is whether a conspiracy to violate 26 U.S.C. § 7206(2) is an offense embracing an "attempt in any manner to evade or defeat any tax or the payment thereof" within the meaning of § 6531(8). This Court holds that it does not. The law favors repose of criminal violations, Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), and exceptions to the general three year limit on prosecutions under

§ 6531 are narrowly construed. United States v. Scharton, 285 U.S. 518, 521–522, 52 S.Ct. 416, 76 L.Ed. 917 (1932). Therefore, the "evade or defeat" language of § 6531(8) only refers to other statutes embodying that critical language. Waters v. United States, 328 F.2d 739, 743 (C.A. 10, 1964). It is significant to note that to obtain a conviction under 26 U.S.C. § 7206(2), the Government need not prove that there was an attempt "to evade or defeat taxes." See Sansone v. United States, 380 U.S. 343, 352, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Moreover, § 6531(3) establishes a six year limit for willfully aiding or assisting in the preparation or presentation under the internal revenue laws of a false or fraudulent return. This subsection closely tracks the language of § 7206(2). Yet § 6531(8), which reaches conspiracies, significantly departs from that language and refers to conspiracies "to evade or defeat taxes." This distinction is highly significant and evidences a Congressional awareness of a difference between a substantive violation of § 7206(2) and a conspiracy to violate § 7206(2), and a Congressional intent to establish a six year limit on prosecution for substantive violations of § 7206(2), while applying only a three year limit on conspiracies to violate § 7206(2).

▮ Since not one of the overt acts constituting the conspiracy to violate § 7206(2) is alleged to have occurred within three years of the date of return of the indictment, Paragraph 2(b) of Count 1 of the indictment charging a conspiracy to violate § 7206(2) will be dismissed as barred by the applicable statute of limitations.

3. Since the Court has dismissed Paragraphs 1 and 2(a) and will dismiss Paragraph (2)(c) (see infra), the only remaining charging paragraph in Count 1 is Paragraph 2(b), which does not allege concealment as part of the conspiracy to violate § 7206(2). Were this indictment to be redrawn so that the count sufficient-

ly charged a continuing conspiracy to conceal from and to give false answers to government agencies on matters within their jurisdiction in violation of 18 U.S.C. § 371, with allegations of overt acts occurring within three years, the action might not be time-barred.

Paragraph 2(c) of Count 1 charges that the defendant did conspire to commit:

"the crime on the part of D. Irving Obrow of knowingly and wilfully falsifying, concealing, and covering up by trick, scheme, and device material facts concerning monies paid by International Latex Corporation, a Delaware Corporation, to Thomas A. Knowlton, a Labor Consultant, during the period August 26, 1959 up to and including September 16, 1966, which are matters within the jurisdiction of agencies of the United States, namely the Department of Labor and the Internal Revenue Service of the United States Treasury Department, in violation of Section 1001 of Title 18, United States Code (18 U.S.C. 1001).

\*     \*     \*     \*     \*     \*

"All in violation of 18 United States Code, 371."

The defendants claim that this charging paragraph fails to specify the elements of the offense with sufficient clarity. The Court agrees. Even when the "means and manner" paragraphs and overt acts are read in conjunction with the charging paragraph, it is unclear with what offense the defendants are charged. 18 U.S.C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Since the statute makes it unlawful to conceal a material fact as well as make a false statement, the charging paragraph could be referring to either the failure to file a report with the Department of Labor of the payments to Knowlton, allegedly required by 29 U.S.C. § 433(a) or to the deduction of the payments to Knowlton as business expenses on the corporate income tax returns. This glaring ambiguity is underscored by the fact that the charging Paragraph 2(c) refers to both the Department of Labor and the Internal Revenue Service, implying at least two different and diverse substantive offenses. The Government suggests that read in conjunction with overt act 25, it is clear that the charging paragraph refers only to falsely claiming to the Internal Revenue Service that the expenditures deducted were for "manufacturing and shipping operations" of the company. However, at other places in Count 1, such as Paragraph 11, there is an allegation of failure to file reports required by 29 U.S.C. § 433(a) to which the charging paragraph could be referring. Since a reading of Count 1 of the indictment fails to adequately apprise the defendants of the particular conduct charged as violative of § 1001 and leaves the matter entirely to speculation, charging Paragraph 2(c) will be dismissed.

For the foregoing reasons, Count 1 will be dismissed in its entirety.

II. *Counts 2 and 3.*

Counts 2 and 3 charge Heinze, Feller and Obrow with willfully and knowingly aiding in the preparation of corporate income tax returns of Stanley Warner Corporation which were false and fraudulent as to a material matter in that the "other deduction" column on the corporate returns was overstated by $77,000 in the fiscal year ending August 28, 1965 (Count 2) and by $84,750 in the fiscal year ending August 27, 1966 (Count 3).

The defendants challenge these counts on the ground that they fail to adequately show the items comprising the overstatement and the essential facts as to why the items were non-deductible.

56

The Court agrees. Had the counts referred to some of the allegations found in Count 1, it might be clear that the overstated deductions referred to the allegedly illegal payments made to Knowlton in those years or to the payments by Knowlton to union representatives. However, there is no reference to the allegations in Count 1 in either Counts 2 or 3, and the rule is, that in such a case, the counts must stand alone in determining whether they adequately inform the defendants of the offenses which they are alleged to have committed. Davis v. United States, 357 F.2d 438, 440 (C.A. 5, 1966), cert. den. 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); United States v. Gordon, 253 F.2d 177, 180 (C.A. 7, 1958); Walker v. United States, 176 F.2d 796, 798 (C.A. 9, 1949); See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

Standing alone Counts 2 and 3 fail to inform the defendants charged of the nature of the overstated deductions or the underlying facts why the deductions were impermissible. Furthermore, since Stanley Warner Corporation listed "other deductions" of $35,958,320.15 in 1966 and $37,724,625.92 in 1967, the failure to identify the source of the funds falsely overstated as deductions in the comparatively small amounts of $77,000 in 1966 and $84,750 in 1967 compounds the vagueness of Counts 2 and 3. Such indefiniteness, leaving so many essentials to pure guess, renders both counts defective and they will be dismissed.

III. *Count 4.*

■ Count 4 of the indictment charges Obrow with a violation of 29 U.S.C. § 439(a) for failure to file a report with the Secretary of Labor showing certain payments made to a labor relations consultant during the fiscal year ended August 26, 1967 as required by 29 U.S.C. § 433(a). The Court also finds this count fatally defective. As stated above, in the discussion of Count 1, § 433(a) requires reports from employers on four different and distinct types of payment. The factually bare allegations of Count 4 fall far short of informing Obrow which of the four subsections of § 433(a) his failure to file a report violated. From the lack of essential factual details pleaded, it conceivably could be any of the four. For this reason Count 4 will be dismissed.

■ In summary, charging Paragraphs 1, 2(a) and 2(c) of Count 1, and Counts 2, 3 and 4 have been found, after the most careful review, to be so vague, indefinite and unclear as to be fatally defective under Rule 7(c), F.R.Crim.P., which requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense[s] charged." This prolix indictment having failed to meet the clarity required by the Rule offends two constitutional provisions: the Sixth Amendment right to be informed of the nature and cause of the accusation in order to prepare one's defense, Russell v. United States, 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), and the Fifth Amendment protection against being put in jeopardy twice for the same offense. United States v. Panzavecchia, 421 F.2d 440, 441–442 (C.A. 5, 1970), cert. den. 404 U.S. 966, 92 S.Ct. 343, 30 L.Ed.2d 286 (1971). Furthermore, the indictment is too unclear to insure under the Fifth Amendment that it is the indictment of the Grand Jury and not by speculation and interpolation the indictment of the prosecutor. United States v. Silverman, 430 F.2d 106, 110 (C.A. 2, 1970), cert. den. 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). Finally, the conspiracy charged in Paragraph 2(b) of Count 1 as returned by the Grand Jury is barred, on its face, by the three year general period of limitation provided in 26 U.S.C. § 6531. Rule 12(b)(1), F.R.Crim.P.

IV. *Other Grounds For Dismissal.*

■ The Court will consider briefly other grounds for dismissal raised by

the defendants which, though not necessary in light of the Court's present opinion, will doubtless be raised again in the event the Government seeks to reindict the defendants. First, the defendants claim that a delay of several years by the Government in returning the indictment resulted in prejudice to the defendants and seek dismissal under Rule 48, F.R.Crim.P. The Supreme Court held in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that Rule 48 is not violated by a delay in the presentation of a case to the Grand Jury where a defendant has not been held to answer. Here the defendants were not held to answer until after the indictment was returned. The Court in *Marion* did imply that an intentional pre-prosecution delay to gain an advantage would be a different story. However, there has been no intentional delay shown here. In fact it is to be anticipated that where a complicated corporate financing scheme is being investigated it may take a great deal of time before the evidence is marshaled that is adequate to sustain an indictment. In view of this fact, the Court is unable to say that a delay of several years from the time investigation first commenced until indictment was intentional.

The defendants also contend that contrary to Rule 6(e), F.R.Crim.P., the secrecy of the Grand Jury proceedings was violated because unauthorized persons, namely an attorney from the Internal Revenue Service and an attorney from the Tax Division of the Department of Justice were permitted to be present in the Grand Jury Room. In answer to this charge the Government produced documents which had designated the two as special assistant United States Attorneys under the authority of 28 U.S.C. §§ 515, 543. At oral argument, the Government represented to the Court that the Government attorneys were not in the Grand Jury Room prior to their designation. The Court accepts this explanation.

In addition, the defendants assert that the secrecy of the Grand Jury was compromised because a prospective witness was allowed to review his prior testimony. Since the witness obviously was in the Grand Jury Room and aware of his own testimony when he gave it, it can scarcely be said that his review of his testimony in those proceedings was a "disclosure". Hence there was no improper disclosure in allowing the witness to review his prior testimony. United States v. American Radiator and Standard Sanitary Corp., 45 F.R.D. 477 (W. D.Pa.1968).

Lastly, Heinze challenges the propriety of certain questions put to him when he was summoned the second time before the Grand Jury. He claims that the Government attorneys were advised beforehand that he would assert his Fifth Amendment privilege to certain questions and that nevertheless the prosecutor repeatedly asked these questions, forcing Heinze to assert his Fifth Amendment rights continually which prejudiced him in the eyes of the Grand Jury. It is further claimed that the prosecutor underscored his failure to answer questions by asking him the color of the walls of the Grand Jury Room.

Because the present indictment will be dismissed, the Court declines to consider whether the manner of questioning Heinze before the Grand Jury overstepped the bounds of propriety. Nevertheless, in the event that reindictment is sought, it would appear to be the better and preferred practice for the Government to avoid asking questions of a sarcastic nature apparently designed to emphasize the witness' assertion of Fifth Amendment rights.