**UNITED STATES of America**

v.

**Gerald Leo ROGERS, aka T.T. Smith III, Claude de Bleu, Allan J. Martin, James F. Stokes, J.R. Kingston, and Ambrose I. Goldsmith, Gary W. Coomber, Mario Fonseca-Lopez, and Arnold P. Lepone.**

Crim. A. No. 84–CR–337.

United States District Court, D. Colorado.

May 21, 1986.

Gerald Rafferty and Richard J. Nolan, Asst. U.S. Attys., Denver, Colo., for plaintiff.

John Moorhead, Baker & Hostetler, Denver, Colo., and Jeffrey S. Gordon, O'Donnell & Gordon, Los Angeles, Cal., for Rogers.

Laurence B. Finegold, Finegold & Zulauf, Seattle, Wash., for Coomber.

Ray Takiff, Coconut Grove, Fla., for Fonseca-Lopez.

Michael Canges, Nina Iwashko, Canges & Volpe, Denver, Colo., for Lepone.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is the second lengthy opinion I have written in this case. The first appears at 602 F.Supp. 1332 (D.Colo.1985).

After eighteen months of investigation and deliberation regarding an alleged scheme to sell fraudulent gold mining tax shelter investments, a grand jury of the District of Colorado returned a thirty count indictment in this case against defendants Gerald Rogers, Gary Coomber, Arnold Lepone, and Mario Fonseca-Lopez. The indictment charges the named defendants with mail fraud, racketeering, tax fraud, securities fraud, conspiracy to obstruct justice, obstruction of justice, and perjury. Additionally, the indictment alleges forfeitures under the Comprehensive Forfeiture Act of 1984, 18 U.S.C. § 1963. The day after the indictment was returned, the grand jury filed a "Superceding (sic) Indictment" which contained the identical counts plus an additional paragraph in the forfeiture allegations following Count XI. This paragraph lists the entities which are subject to the forfeiture allegations.

Fourteen motions are now pending: (1) Rogers' motion for disclosure of all matters occurring before the grand jury; (2) Rogers' motion for severance of counts XXII through XXVI; (3) Coomber's motion to sever counts I through IV and XXII through XXVI; (4) Rogers' motion to dismiss count XI (RICO); (5) Coomber's motion to dismiss count XI (RICO); (6) Rogers' motion to dismiss counts XVI through XXI and XXIII through XXVI for insufficiency; (7) Coomber's motion to dismiss count XXII (conspiracy to obstruct justice) for insufficiency; (8) Rogers' motion in limine to preclude the government from calling defense counsel as prosecution witnesses; (9) Rogers' motion for collateral estoppel; (10) Rogers' motion to dismiss for grand jury abuse and prosecutorial misconduct; (11) Coomber's motion for suppression of items seized and statements made; (12) Coomber's motion for information regarding prior misconduct and convictions; (13) Coomber's motion to strike; and (14) Lepone's motion for disclosure regarding mail cover.

Before turning to a consideration of each of these motions, I shall briefly summarize the various counts in the indictment. Counts I through IV allege that Rogers and Fonseca-Lopez committed acts of mail fraud in violation of 18 U.S.C. § 1341. Counts V through X allege that Coomber, Rogers, and Fonseca-Lopez committed further and different acts of mail fraud. Count XI alleges that Coomber, Rogers, and Fonseca-Lopez were engaged in an enterprise and committed acts of racketeering in violation of the Racketeer Influenced

and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Counts XII through XV allege that Coomber, Rogers, and Fonseca-Lopez engaged in acts constituting securities fraud in violation of 15 U.S.C. §§ 77q(a), 77x, and 18 U.S.C. § 2. Counts XVI through XXI allege that Rogers and Coomber committed acts of tax fraud in violation of 26 U.S.C. § 7206(2). Count XXII alleges that Rogers and Coomber conspired to obstruct justice, in violation of 18 U.S.C. § 371. Counts XXIII through XXVI charge Rogers with obstructing justice, in violation of 18 U.S.C. § 1503, by inducing witnesses to testify falsely before the grand jury. Counts XXVII through XXX charge Lepone with violating 18 U.S.C. § 1623(a) by testifying falsely before the grand jury.[1]

## I. MOTION FOR DISCOVERY OF GRAND JURY MATERIALS

Rogers' motion for discovery of grand jury materials is mooted by my decision on May 6, 1986, granting Rogers' request for disclosure of all *in camera* materials submitted by the government in this case.

## II. MOTIONS FOR SEVERANCE

Pursuant to Fed.R.Crim.P. 14, both Rogers and Coomber have moved for severance in this case. In relevant part, Rule 14 provides:

> If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.

Rule 14 permits severance of counts in the indictment, as well as severance of co-defendants, where joinder is prejudicial. Both Rogers and Coomber seek severance of counts. Coomber also requests severance as a co-defendant.

### A. Rogers' Motion for Severance of Counts

The first step in considering a motion for severance of counts is to determine whether the offenses charged in the indictment were properly joined under Fed.R.Crim.P. 8(a). *See* 1 C. Wright, *Federal Practice and Procedure* § 221 at 769 (Rule 14 comes into play only if the original joinder of offenses was proper under Rule 8). Rule 8(a) provides a wide ambit for joinder of offenses charged against a single defendant:

> Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In the instant case, Rogers seeks severance of the charges of obstruction of justice (counts XXII through XXVI) from the remaining counts in the indictment. Although Rogers does not contend that the obstruction charges were improperly joined with the remaining counts, I have determined they were properly joined under Rule 8. Evidence of Rogers' involvement in the alleged RICO, mail, tax, and securities fraud offenses would tend to establish a motive for the obstruction of justice charges. Similarly, evidence regarding the obstruction counts would tend to establish the existence of guilty knowledge with respect to the RICO, mail, tax, and securities fraud charges. The offenses alleged are all part of the same common scheme and are inextricably connected. *See United States v. Berardi*, 675 F.2d 894, 900 (7th Cir.1982); *United States v. Carmichael*, 685 F.2d 903, 910 (4th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983). Thus, they have been properly joined under Rule 8(a).

---

**1.** Counts XXVII through XXX have been severed pursuant to Fed.R.Crim.P. 14. Lepone will be tried separately.

The second step in considering a motion for severance of counts is to determine whether the defendant will be prejudiced by joinder of those counts. In the instant case, Rogers asserts that the obstruction of justice counts must be severed from the remaining charges because they would cause substantial prejudice. More specifically, Rogers contends prejudice would arise in this case due to the number and complexity of the charges which would prevent the jury from separating the evidence relevant to each charge, despite limiting instructions. Further, Rogers argues the jury will infer guilt on the RICO, mail, tax, and securities fraud charges from evidence he allegedly compelled grand jury witnesses to commit perjury with respect to the facts underlying those charges.

"In order to obtain a severance, a defendant must show clear prejudice resulting from joinder at trial." *United States v. Strand,* 617 F.2d 571, 575 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980) (citing *United States v. Bridwell,* 583 F.2d 1135 (10th Cir.1978)); *see also United States v. Burrell,* 720 F.2d 1488, 1492 (10th Cir.1983). It is not enough that the defendant would have a better chance of acquittal if separate trials were held. *See United States v. Brown,* 784 F.2d 1033, 1038 (10th Cir.1986) (citing *Strand,* 617 F.2d 571); *Burrell,* 720 F.2d 1488, 1492 (citing *United States v. Neal,* 692 F.2d 1296, 1305 (10th Cir.1982); *United States v. Dennis,* 625 F.2d 782, 802 (8th Cir.1980)). The prejudice resulting from joinder of offenses must be such that the defendant would be deprived of a fair trial.

*See United States v. Chagra,* 754 F.2d 1186, 1188 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 255–56, 88 L.Ed.2d 262 (1985).

█ In the instant case, I find Rogers has failed to demonstrate prejudice which would deprive him of a fair trial. Although the offenses in this case are numerous and some of the evidence may be complex, a jury would not be unable to give separate consideration to each offense. Limiting instructions will provide an adequate safeguard against any risk of prejudice in the form of jury confusion, evidentiary spillover, and cumulation of evidence. *See Berardi,* 675 F.2d 894, 901 (citing *Strand,* 617 F.2d 571, 575; *United States v. Pacente,* 503 F.2d 543, 547 (7th Cir.1974) (en banc), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974)). Further, it is significant that evidence regarding the obstruction of justice charges is admissible in a trial on the RICO, mail, tax, and securities fraud counts. Similarly, evidence of Rogers' involvement in the alleged racketeering and fraud charges is admissible in a trial on the obstruction charges because such evidence tends to establish consciousness of the illegal scheme. Under these circumstances, separate trials would be unnecessarily duplicitous. For these reasons, Rogers' motion for severance is denied.[2]

## B. Coomber's Motion to Sever Counts I through IV and XXII through XXVI

Coomber has also moved for severance of the obstruction of justice counts. Unlike Rogers, however, Coomber is charged

**2.** Rogers' argument that the Tenth Circuit has implicitly acknowledged, in *United States v. Sutton,* 732 F.2d 1483 (10th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985), that charging obstruction of justice potentially prejudices a fair trial on multiple RICO and fraud charges is without merit. In *Sutton,* the court stated:

Before trial defendant moved for a severance of counts sixteen and seventeen [obstruction of justice]. Because all the counts grew out of the same scheme, joinder was proper under Fed.R.Crim.P. 8(a). Defendant argued that evidence on counts sixteen and seventeen would unfairly prejudice the jury against him

on the first fifteen counts. Since the trial court entered judgments of acquittal on the first fifteen counts [RICO and fraud], there was no harm to defendant on those counts. We find no abuse of discretion in the trial court's refusal to sever.

732 F.2d 1483, 1489.

The Tenth Circuit's choice of language is less than clear and, thus, rather unfortunate. Nevertheless, I find the court never reached the issue of prejudice and that this language was not intended to imply that joinder of obstruction of justice charges with RICO and fraud charges would cause prejudice resulting in an unfair trial.

only with conspiracy to obstruct justice (count XXII). With respect to that offense, Coomber seeks a severance of counts. Regarding the substantive obstruction offenses, Coomber seeks severance as a co-defendant. Additionally, Coomber requests a severance, as a co-defendant, of counts I through IV which charge Rogers and Fonseca-Lopez with mail fraud.

Again, the starting point is to determine whether all of the offenses charged have been properly joined under Rule 8. With respect to Coomber's request for severance of the conspiracy to obstruct justice count, the same reasoning applies as that previously set forth. Thus, I find that this charge has been properly joined under Rule 8(a).

Rule 8(b) governs the joinder of co-defendants. It provides:

> Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Coomber argues, first, that counts I through IV (mail fraud charges against Rogers) and XXIII through XXVI (substantive obstruction of justice charges) were not properly joined under Rule 8(b). In support of this argument, Coomber attempts to isolate these offenses from those with which he is charged. Coomber contends the indictment alleges two distinct fraud schemes which were associated with two different fictitious gold mining companies—GEMSA and IME. The mail fraud alleged in counts I through IV relate primarily to the GEMSA operation. Counts V through X charge Coomber with mail fraud in connection with the IME operation. It is asserted these schemes were unrelated, Coomber was not involved in the GEMSA scheme, and these schemes do not consti-

tute a "series of acts or transactions constituting an offense or offenses" under Rule 8(b).

Contrary to these assertions, I find the indictment alleges one continuous and overall gold mining tax shelter scheme even though different fictitious companies were utilized at different time periods to accomplish the goals of the scheme. Joinder is appropriate under Rule 8(b) where there is a common plan or scheme. *See United States v. McKuin,* 434 F.2d 391, 395 (8th Cir.1970), *cert. denied sub. nom. Frey v. United States,* 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971) (no prejudicial misjoinder of defendants in mail fraud prosecution where defendants devised and intended one overall scheme to defraud); *United States v. Ford,* 632 F.2d 1354, 1371 (9th Cir.1980), *cert. denied sub. nom. Armstrong v. United States,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981) (a logical relationship between offenses sufficient to constitute a series of acts or transactions under Rule 8(b) may be shown by the existence of a common plan, scheme, or conspiracy); *see also United States v. Bledsoe,* 674 F.2d 647, 656 (8th Cir.), *cert. denied sub. nom. Phillips v. United States,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Preston,* 634 F.2d 1285, 1291 (10th Cir. 1980). The mail fraud offenses alleged in counts I through IV and the obstruction of justice charges alleged in counts XXIII through XXVI are inextricably related to the common plan to defraud. Although Coomber is not charged in those counts, Rule 8(b) specifically provides that "all of the defendants need not be charged in each count." Thus, joinder is proper under the circumstances of this case even though Coomber is charged with some, but not all, counts of the indictment. *See United States v. Weisman,* 624 F.2d 1118, 1129 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); *Bledsoe,* 674 F.2d 647, 656.[3]

---

3. Because I find the indictment alleges one overall scheme, I need not address Coomber's argument that the only factor linking the offenses is count XI (RICO). I note, however, that "a RICO

 Next, Coomber argues Counts I through IV and XXII through XXVI must be severed under Rule 14 because he would be prejudiced by the introduction of evidence relating to those offenses. More specifically, Coomber asserts the jury will not be able to compartmentalize the evidence or give separate consideration to each offense. As with Rogers, I find Coomber has failed to demonstrate prejudice which would deprive him of a fair trial.[4] I am not willing to state, especially in the circumstances of this case, that a properly instructed jury is incapable of meeting its constitutional responsibilities. Although the offenses in this case are numerous and some of the evidence may be complex, a jury is fully capable of giving separate consideration to each offense. Limiting instructions will provide adequate safeguards in this case against any risk of prejudice in the form of jury confusion, evidentiary spillover, and cumulation of evidence. Accordingly, Coomber's motion for severance is denied.

### III. MOTIONS TO DISMISS RICO CHARGE

Both Rogers and Coomber have moved to dismiss count XI of the superseding indictment which charges them with engaging in racketeering activities in violation of 18 U.S.C. § 1962(c). Defendants contend this count is fatally defective with respect to certain elements of the substantive RICO offense. Before considering defendants' specific arguments, I shall set forth the elements of proof necessary and other background information relevant to their assertions.

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Under the statute, "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" requires the commission of two or more enumerated acts within ten years and includes mail fraud. 18 U.S.C. §§ 1961(1)(B), (5).

The essential elements needed to secure a conviction under § 1962(c) are: (1) the existence of an enterprise; (2) the enterprise affected interstate commerce; (3) the defendant was employed by or associated with the enterprise; (4) he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) he participated through a pattern of racketeering. *See United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied sub. nom. Turner v. United States*, 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983); *United States v. Martino*, 648 F.2d 367, 394 (5th Cir.1981). While proof regarding each of these elements is essential to obtain a conviction, evidence establishing the existence of an enterprise is most crucial since "the statute only forbids the predicate acts insofar as an enterprise is involved." *Saine v. A.I.A., Inc.*, 582

---

substantive count can provide an overall connection that will allow the joinder of seemingly unrelated acts. . . ." *United States v. Welch*, 656 F.2d 1039, 1051 (5th Cir.1981), *cert. denied sub. nom. Cashell v. United States*, 456 U.S. 915, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982); *see also United States v. Lee Stoller Enterprises, Inc.*, 652 F.2d 1313, 1319 (7th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981); *United States v. Bright*, 630 F.2d 804, 812 (5th Cir.1980). Thus, even if the offenses in the instant case could be deemed separate and unrelated, count XI could provide the nexus required for joinder.

**4.** Coomber also implies, but fails to articulate, that his defense might be antagonistic to putative defenses of the other defendants. I recognize such a situation may indicate the need for severance. Coomber fails, however, to establish how his defense would be antagonistic to the defenses of his co-defendants. Further, there is no showing of compelling prejudice. Thus, severance is not required on this purported basis.

F.Supp. 1299, 1303 (D.Colo.1984) (citing *Bennett v. Berg,* 710 F.2d 1361, 1362 (8th Cir.1983), *cert. denied sub. nom. Prudential Insurance Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) (approving panel discussion at 685 F.2d 1053, 1061 n. 10)).

To establish the existence of an enterprise, three requirements must be met. First, the government must adduce "evidence of an ongoing organization, formal or informal...." *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). An "ongoing organization" relates to "the superstructure or framework of the group." *United States v. Riccobene,* 709 F.2d 214, 222 (3d Cir. 1983), *cert. denied sub. nom. Ciancaglini v. United States,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). To satisfy this requirement,

> the government must show that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis. This does not mean[, however,] that every decision must be made by the same person, or that authority may not be delegated.

*Id.*

Second, the government must offer evidence "that the various associates function as a continuing unit." *Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528. While individual defendants may be members of, or associated with, the organization at different times, the government must prove each

defendant "perform[ed] a role in the group consistent with the organizational structure ... and which further[ed] the activities of the organization." *Riccobene,* 709 F.2d 214,. 223.

Finally, the government must establish the enterprise is "an entity separate and apart from the pattern of [racketeering] activity in which it engages." *Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528. In other words, it must be proved the enterprise "has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses."[5] *Riccobene,* 709 F.2d 214, 224. If the government were allowed to prove the enterprise element solely by evidence indicating an association to commit the pattern of racketeering activity, the statute's requirement of an enterprise would be effectively eliminated. *See United States v. Anderson,* 626 F.2d 1358, 1369 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). As the Eighth Circuit has stated,

> under RICO, an enterprise cannot simply be the undertaking of the acts of racketeering, neither can it be the minimal association which surrounds these acts. Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself. Thus unless the inclusion of the enterprise element requires proof of some structure separate from the racketeering activity and distinct from the organization which

---

**5.** In *Saine,* I recognized there is a conflict among the circuits on the proper interpretation of what evidence is needed to prove the "enterprise". 582 F.Supp. 1299, 1304. "The Eighth Circuit has held that the evidence needed to prove the 'enterprise' must be different from that used to prove the 'pattern of racketeering'." *Id.; see Bennett,* 685 F.2d 1053; *Bledsoe,* 674 F.2d 647; *United States v. Anderson,* 626 F.2d 1358 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). Other circuits, however, have rejected the view that the evidence offered to prove the "enterprise" and the "pattern of racketeering" must necessar-

ily be distinct. *See, e.g., United States v. Mazzei,* 700 F.2d 85 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir.1983), *cert. denied sub. nom. Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Bagaric,* 706 F.2d 42 (2d Cir.), *cert. denied sub. nom. Logarusic v. United States,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). The United States Supreme Court has yet to resolve this conflict. In *Saine,* I chose to follow the Eighth Circuit. 582 F.Supp. 1299, 1305. That approach shall be applied in the instant case as well.

is a necessary incident to the racketeering, the Act simply punishes the commission of two of the specified crimes within a 10-year period.

*Bledsoe*, 674 F.2d 647, 664; *see also Saine*, 582 F.Supp. 1299, 1305.

In the instant case, Rogers and Coomber assert the RICO charge must be dismissed because the definition of the enterprise in count XI is indistinguishable from the alleged pattern of racketeering. The government, on the other hand, maintains there is ample evidence of the separate existence of the enterprise in this case and even if no acts of racketeering had been perpetrated, the existence of the enterprise could still be established.

Count XI, in relevant part, states as follows:

The Grand Jury further charges that: 1. Paragraphs 1 through 12 of the Introduction are realleged and incorporated herein as if fully set forth in this Count. 2. At times relevant herein, GERALD LEO ROGERS, MARIO FONSECA–LOPEZ and GARY W. COOMBER, defendants herein, together with others both known and unknown to the Grand Jury, including IME and GEMSA, being individuals and companies associated in fact, constituted an "enterprise" as defined by the Racketeer Influenced and Corrupt Organizations Act, Title 18, United States Code, Section 1961(4). The purpose of said enterprise was to devise, promote and sell tax shelter investments in gold ventures in French Guiana, Panama and Canada and to expend monies obtained from United States citizens who invested in said ventures. 3. At times relevant herein, the activities of said enterprise were conducted through one or more of the entities listed and set forth in Paragraph 1 and Paragraphs 4 through 12 of the Introduction. 4. Beginning on or about June 1, 1977, and continuing until the date of this Indictment, in the State and District of Colorado and elsewhere, GERALD LEO ROGERS, MARIO FONSECA–LOPEZ and GARY W. COOMBER, defendants

herein, together with others both known and unknown to the Grand Jury ("coracketeers"), being individuals employed by and associated with said enterprise, which was engaged in, and the activities of which affected interstate and foreign commerce, did knowingly and willfully conduct the affairs of said enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(5), consisting of the acts set forth in Counts I through X inclusive, which are realleged and incorporated herein as if fully set forth in this Count.

All in violation of Title 18, United States Code, Section 1962(c).

Superseding Indictment, Count XI at 15. Paragraph 2 of the forfeiture allegations in count XI states

[t]he defendants GERALD LEO ROGERS, GARY W. COOMBER, and MARIO FONSECA–LOPEZ have interests in, securities of, claims against, and contractual rights affording a source of influence over the enterprise described in Paragraphs 2, 3 and 4 of Count XI, which enterprise the defendants established, operated, controlled, conducted, and participated directly or indirectly in the conduct of through a pattern of racketeering activity in violation of Title 18, United States Code, Section 1962(c), thereby making the above-mentioned interest subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2).

Superseding Indictment, Count XI, Forfeiture Allegations, Paragraph 2 at 16.

 These allegations track the language of § 1962(c) and contain each of the five basic elements necessary to obtain a conviction on this RICO offense. Although count XI does not explicitly state each of the requirements needed to prove the existence of the enterprise, the introductory paragraphs incorporated in count XI clearly indicate there was a complex, ongoing organization consisting of the defendants and numerous companies and the various associates of the enterprise functioned as a

continuing unit from 1977 through 1984. While the purpose of this enterprise was to devise, promote, and sell fraudulent tax shelter investments in gold mining operations, I am satisfied the superseding indictment adequately alleges "an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes." *Bledsoe*, 674 F.2d 647, 665. Accordingly, defendants' motions to dismiss count XI for failure to establish the separate existence of the enterprise are denied.[6]

■ Coomber has also moved to dismiss this count on the ground that the superseding indictment fails to allege he participated in or conducted the affairs of the enterprise in any manner separate from the alleged pattern of racketeering. Contrary to Coomber's assertion, paragraph 10 of the Introduction, which is incorporated in count XI, and Paragraph 2 of the forfeiture allegations of count XI, allege Coomber controlled two of the subject companies which were purportedly part of the enterprise and through which the enterprise conducted its activities. At this stage of the litigation, this is sufficient to meet the separate elements of participation in the affairs of the enterprise and the pattern of racketeering.[7] Thus, Coomber's motion to dismiss is denied on this ground.

**6.** Rogers asserts in response to the government's reply that the government is attempting to redefine the enterprise as consisting solely of the companies involved in this case. According to Rogers, this provides an additional ground for dismissal since it denies his Fifth Amendment right to be held to answer only on the evidence presented to and the charges brought by the grand jury. I recognize a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury", and variations between pleading and proof may destroy that right. *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). It is premature, however, to presume such a variance will occur in this case. Thus, this ground for dismissal is denied, but without prejudice.

**7.** Coomber also implies he must have had authority to conduct the affairs of the enterprise

## IV. MOTIONS TO DISMISS FOR INSUFFICIENCY

Rogers has moved for dismissal of counts XXIII.through XXVI (obstruction of justice) and counts XVI through XXI (tax fraud) on the ground that these counts are insufficient. Coomber has joined in this motion to the extent it seeks to dismiss offenses with which he is charged (counts XVI through XXI). Coomber has also filed a separate motion to dismiss count XXII (conspiracy to obstruct justice) for insufficiency. Rogers' and Coomber's motions will be addressed separately.

### A. Rogers' Motion to Dismiss for Insufficiency

The Fifth Amendment to the Constitution guarantees "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentation or indictment of a Grand Jury. . . ." An indictment is a jurisdictional prerequisite in cases, such as the instant one, in which an indictment is constitutionally required. Where an indictment is presented, it must be valid and each count must be sufficient as a matter of law before the case can proceed to trial.

In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the United States Supreme Court set forth the essential criteria for measuring the sufficiency of an indictment. These criteria

in order to be held accountable under RICO. On this point, I note

> [t]he substantive proscriptions of the RICO statute apply to insiders *and outsiders*—those merely "associated with" an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). *Cf. United States v. Forsythe*, 560 F.2d 1127, 1135–36 (3d Cir.1977). Thus, the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.

*United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.), *cert. denied sub. nom. Delph v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). This is not to imply that Coomber was a big or a small fish, but rather that I find the allegations in the superseding indictment indicate Coomber's role in this alleged scheme was such that he may properly be held to answer the charges in count XI.

have been adopted by the Tenth Circuit in *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), cert. denied, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976):

First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause. *Russell,* supra, 369 U.S. at 763–64, 82 S.Ct. at 1046–47, 8 L.Ed.2d at 250–51; *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516, 518 [ (1888) ]. And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. *Russell,* supra, 369 U.S. at 768, 82 S.Ct. 1049, 8 L.Ed.2d at 253; *United States v. Hess,* supra, 124 U.S. at 487, 8 S.Ct. at 573, 31 L.Ed. at 518. Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him. *Russell,* supra, 369 U.S. at 770–71, 82 S.Ct. at 1050–51, 8 L.Ed.2d at 254–55; *see Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252, 256–57 [ (1960) ]; *Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061, 1066–67 [ (1969) ].

In the instant case, Rogers argues the subject counts are fatally defective in that they fail to perform any of the functions set out above. Rogers emphasizes the fourth factor, however, most heavily. In general, it is asserted the counts are impermissibly vague and, thus, infringe on the Fifth Amendment guaranty that he be tried only on charges made by the grand jury and not on charges later determined by the prosecutor to be used as grounds for trial and conviction. Before turning to Rogers'

specific arguments, I shall set out the counts which Rogers seeks to dismiss as insufficient.

1. Tax Fraud Counts

■ Count XVI states in full:

The Grand Jury further charges that:

On or about April 15, 1982, in the State and District of Colorado and elsewhere, GERALD LEO ROGERS and GARY W. COOMBER, the defendants herein, did knowingly and willfully aid and assist in, and counsel, procure, and advise the preparation and presentation to the Internal Revenue Service of an income tax return of Leo Bonacci for the calendar year 1981, which was false and fraudulent as to a material matter, in that it represented that the said Leo Bonacci was entitled under the provisions of the Internal Revenue laws to claim deductions for mining development expenses in the amount of $25,000.00, whereas GERALD LEO ROGERS and GARY W. COOMBER then and there well knew and believed that the said Leo Bonacci was not entitled to the deductions for mining development expenses in the amount which he claimed for said calendar year, in violation of Title 26, United States Code, Section 7206(2).

Count XVI, Superseding Indictment at 20. Counts XVII through XXI are identical to count XVI except for the name of the person claiming the deductions and the amount of the claimed deductions.

Rogers asserts the false or fraudulent nature of the deductions is at the core of the tax offenses and counts XVI through XXI fail to disclose why the mining development expenses were non-deductible in the amount claimed. Rogers argues the bare allegations that the tax returns were fraudulent are not sufficient because the government would be free to present any number of factual and legal premises for establishing the deductions at issue were inappropriately taken.

Separate examination of the subject counts [8] reveals, as Rogers points out, no legal or factual basis is stated for why the deductions were fraudulent. These counts merely track the language of § 7206(2), and are stated in general terms. Defendants are left to speculate as to why the deductions were fraudulent. Further, the tax counts can be read to imply either that no deductions could be lawfully taken or merely that the amounts of the deductions were improper.

I recognize "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute...." *United States v. Irwin,* 654 F.2d 671, 681 (10th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). Also, "[m]ere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment...." *United States v. Curtis,* 506 F.2d 985, 989 (10th Cir.1974). However, in the instant case, use of the general language of the statute deprives defendants of notice of the basis for a critical element of the offense—the fraudulent nature of the deductions. Defendants have not been apprised by counts XVI through XXI of the nature of the accusations against them with any reasonable certainty. *See Russell,* 369 U.S. 749, 766, 82 S.Ct. 1038, 1048 (citing *United States v. Simmons,* 96 U.S. (6 Otto) 360, 362, 24 L.Ed. 819 (1878)). Under the circumstances of this case, the indictment "must do more than simply repeat the language of the criminal statute," *Russell,* 369 U.S. 749, 764, 82 S.Ct. 1038, 1047; "it must descend to particulars," *United States v. Cruikshank,* 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1876). Since counts XVI through XXI fail to specify *why* the deductions were fraudulent, the notice requirement for sufficiency has not been met.[9] This defect is of constitutional magnitude because the notice requirement for sufficiency is based on the Sixth Amendment which provides, in relevant part, that "the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."

Additionally, for all the indictment shows, the grand jury may have had a concept of the tax fraud offenses essentially different from that which will be relied upon by the government at trial. *See Curtis,* 506 F.2d 985, 989. This point was addressed in *Russell:*

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the [Fifth Amendment] guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050. In the instant case, the conclusory allegations of counts XVI through XXI require both defendants and me to guess as to why the deductions were fraudulent. Thus, these counts leave open the possibility that the government could present legal and factual premises for the charges differ-

---

8. "[E]ach count of an indictment must be regarded as if it were a separate indictment and must stand on its own content without dependence for its validity on the allegations of any other count not expressly incorporated [by reference]." *United States v. Huff,* 512 F.2d 66, 69 (5th Cir.1975) (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932)); *see also* 1 C. Wright, *Federal Practice and Procedure* § 123 at 349; *United States v. Fulcher,* 626 F.2d 985, 988 (D.C.Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). In the instant case, none of the subject counts incorporated other allegations. Thus, they will be considered separately.

9. Additional support for this conclusion is found in *United States v. Heinze,* 361 F.Supp. 46 (D.Del.1973) where the district court held tax fraud counts insufficient because they "fail[ed] to inform the defendants charged of the ... underlying facts *why* the deductions were impermissible...." 361 F.Supp. 46, 56 (emphasis added). The court reasoned "[s]uch indefiniteness, leaving so many essentials to pure guess, renders [these] counts defective and they will be dismissed." *Heinze,* 361 F.Supp. 46, 56.

ent from those presented to and considered by the grand jury, and that defendants could be convicted on the basis of facts not found by the grand jury. Such a possibility contravenes the fourth element for sufficiency and would destroy defendants' Fifth Amendment right to be held to answer on charges only upon indictment by a grand jury. *See, e.g., Stirone,* 316 U.S. 212, 217, 80 S.Ct. 270, 273.

Accordingly, for the above-stated reasons, Rogers' (and Coomber's) motion to dismiss for insufficiency is granted with respect to counts XVI through XXI.

### 2. Obstruction of Justice Counts

■ Count XXIII, which charges Rogers with the substantive offense of obstruction of justice, states in full:

The Grand Jury further charges that:

Sometime between the spring of 1983, and on or about July 26, 1984, in the State and District of Colorado and elsewhere, GERALD LEO ROGERS, the defendant herein, did knowingly, willfully, and corruptly endeavor to obstruct the due administration of justice by counseling and instructing Arnold L. Lepone to give false testimony before the federal Grand Jury in Denver, Colorado, in its investigation of GERALD LEO ROGERS, International Monetary Exchange, S.A., General Mining, S.A., and related entities, all in violation of Title 18, United States Code, Section 1503.

Count XXIII, Superseding Indictment at 26. Counts XXIV through XXVI are identical to count XXIII except for the time period alleged and the name of the person alleged to have been instructed by Rogers to give false testimony before the grand jury.

Again, Rogers contends these counts fail to state critical facts. According to Rogers, the heart of a § 1503 violation is what the alleged counseling and instructing was. Rogers argues counts XXIII through XXVI are totally devoid of the "basis of facts" found by the grand jury to have been the

allegedly illicit counseling and instructing, so the government is totally free to attempt to prove and convict on completely different facts.

I find, however, that these arguments protest too much with respect to the obstruction of justice counts. To begin with, counts XXIII through XXVI contain the basic elements of a § 7206(2) violation and the facts necessary to apprise Rogers of the charges and to prevent double jeopardy. I agree these counts are lacking in detail as to "how" Rogers counseled and instructed the named grand jury witnesses to testify falsely. This is quite different, however, from "why" deductions are fraudulent. With regard to the tax fraud counts, even if the "how" was provided (i.e., how Rogers and Coomber aided, counseled, and advised the taxpayers in preparing their tax returns and taking the mining development deductions), the "why" would still be lacking.

I am satisfied in the instant case that the specifics as to how Rogers counseled and instructed the named witnesses (i.e., specific statements that he made to them) constitute mere evidentiary detail, which need not be pleaded in the indictment. Similarly, I disagree with Rogers' argument that the government may attempt to prove and convict on facts other than those presented to the grand jury. This argument confuses Rogers' constitutional right to know what offenses are charged and to be tried only for those offenses indicted by the grand jury with the need to know the evidentiary details establishing the facts of such offenses. *See United States v. Freeman,* 619 F.2d 1112, 1118 (5th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *Van Liew v. United States,* 321 F.2d 664, 670 (5th Cir.1963). Further, unlike the situation with the tax counts, I see no danger of differing factual predicates for the obstruction of justice charges. Accordingly, Rogers' motion to dismiss for insufficiency is denied with respect to counts XXIII through XXVI.[10]

10. *See, e.g., United States v. Haas,* 583 F.2d 216, 221 (5th Cir.1978), *cert. denied,* 440 U.S. 981, 99

### B. Coomber's Motion to Dismiss for Insufficiency

I now turn to Coomber's separate motion to dismiss count XXII for insufficiency. As stated previously, count XXII of the superseding indictment charges Coomber and Rogers with conspiracy to obstruct justice. Coomber does not raise any of the defects asserted by Rogers in his motion to dismiss for insufficiency. Rather, Coomber asserts the overt acts which he allegedly committed as part of the conspiracy to obstruct justice are insufficient to establish any basis for the offense charged.

Section 1503 provides, in pertinent part: Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Paragraph 4 of count XXII charges:

It was part of said conspiracy that the defendants herein, together with their co-conspirators, would and did devise false stories that would be and were told to the Grand Jury in an effort to conceal the roles of GERALD LEO ROGERS and Wayne Holm in the IME and GEMSA schemes, and to persuade the Grand Jury that the fictitious persons and aliases who were listed as officers and directors of the GEMSA and IME programs, including Claude de Bleu, T.T. Smith, III, Allan J. Martin, Michael Murphy, Arthur Kirk and James Stokes were in fact real persons in charge of these programs.

Superseding Indictment, Count XXII, ¶ 4 at 23. Paragraph 5 further alleges:

It was a further part of said conspiracy that the defendant herein, together with their co-conspirators, corruptly endeavored to and did obstruct, impede and impair the federal Grand Jury investigation of IME, GEMSA, and related entities and individuals by removing, attempting to remove, and destroying documents relevant to the Grand Jury investigation, by making payoffs and loans to witnesses, by paying witnesses' attorney fees, by employing and offering to employ witnesses, by threatening a witness and by other corrupt acts designed to influence, persuade and induce witnesses to testify falsely before the Grand Jury.

Superseding Indictment, Count XXII, ¶ 5 at 23.

The overt acts ascribed to Coomber in count XXII are as follows:

21. On or about November 11, 1982, GARY W. COOMBER attempted to obtain a geology report on Kanata Klondike I property, and all original notes and papers pertaining thereto, from Michael Wetherly.

22. In or about May 1984, GARY W. COOMBER wrote a letter to Consolidated Pan American Mining, S.A., to the attention of Ambrose I. Goldsmith.

23. On or about October 1, 1982, GARY W. COOMBER signed a false affidavit stating that he knew Allan Martin and GERALD LEO ROGERS, and that they were not the same person.

Superseding Indictment, Count XXII, ¶¶ 21–23 at 25.

In its response to Coomber's motion for bill of particulars, the government has acknowledged Coomber is not alleged to have made any payoffs or loans, to have paid any witnesses' attorney fees, to have offered to employ or to have employed witnesses, or to have threatened any witness. *See* Government's Combined Response to

---

S.Ct. 1788, 60 L.Ed.2d 240 (1979) (indictment under 18 U.S.C. § 1503 not invalid for failure to specify nature of "information" communicated to grand juror in effort to influence); *United States v. Haldeman,* 559 F.2d 31, 126 (D.C.Cir. 1976), *cert. denied sub. nom. Erlichman v. United States,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (indictment under 18 U.S.C. § 1503 not invalid for failure to specify all means by

which defendants endeavored to obstruct justice); *United States v. Weiss,* 491 F.2d 460, 466 (2d Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974) (indictment under 18 U.S.C. § 1503 that alleged corrupt endeavor to obstruct justice by failure to produce "documents" subpoenaed by grand jury investigating specified fraud scheme not invalid for failure to allege corrupt conduct more specifically).

Rogers' and Coomber's Requests for Particulars ¶¶ 53–59 at 13–14. The only "corrupt acts" Coomber is charged with are limited to "false stories" and the Wetherly notes incident. The "false stories" include the Goldsmith letter and the false affidavit described in count XXII, and false testimony given in a deposition on February 16, 1982.

Coomber challenges the sufficiency of these overt acts and the conspiracy charge on two grounds. First, it is asserted these acts did not occur during a pending judicial proceeding and, thus, cannot be used to establish the offense charged. Second, Coomber argues intent to obstruct justice is completely lacking with respect to these acts.

### 1. Pending Judicial Proceeding

 In the instant case, the grand jury investigation into the fraudulent tax shelter investment scheme was initiated in April 1982. The government has submitted a letter authored by Coomber's attorney which indicates Coomber may have been aware of the investigation from its inception. *See* Government's Consolidated Response to Coomber's Motion, Attachment A–1.

A prerequisite for a conviction for conspiracy to obstruct justice is the pendency of a judicial proceeding which equates with an "administration of justice." *United States v. McComb*, 744 F.2d 555, 560 (7th Cir.1984); *see also United States v. Walasek*, 527 F.2d 676, 678 (3d Cir.1975); *United States v. Fineman*, 434 F.Supp. 197, 202 (E.D.Pa.1977), *aff'd*, 571 F.2d 572 (3d Cir.), *cert. denied*, 436 U.S. 945, 98 S.Ct. 2847, 56 L.Ed.2d 786 (1978); *cf. United States v. Blohm*, 585 F.Supp. 1112, 1114 (S.D.N.Y. 1984). "A grand jury investigation is such a proceeding." *McComb*, 744 F.2d 555, 560 (citing *United States v. Gates*, 616 F.2d 1103 (9th Cir.1980); *United States v. Shoup*, 608 F.2d 950 (3d Cir.1979); *United States v. Griffin*, 589 F.2d 200 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979)).

Coomber argues none of the overt acts with which he is charged occurred during the pendency of a judicial proceeding. This contention is entirely without merit, with the possible exception of the allegedly false deposition testimony given on February 16, 1982. The remaining alleged overt acts, however, occurred during the grand jury's investigation and purportedly after Coomber became aware of the investigation. Contrary to Coombers' assertions, I find the pendency prerequisite is satisfied with respect to these acts.

### 2. Intent to Obstruct Justice

 Next, Coomber asserts these acts do not demonstrate a basis for any allegation that he intended to obstruct justice.

Specific intent to impede the administration of justice is an essential element of a § 1503 violation which the government must prove beyond a reasonable doubt. *United States v. Sun Myong Moon*, 718 F.2d 1210, 1236 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *see also United States v. Buffalano*, 727 F.2d 50, 54 (2d Cir.1984); *United States v. Ryan*, 455 F.2d 728, 734 (9th Cir.1971). Intent to obstruct justice may, however, be inferred from all of the surrounding facts and circumstances. *See Buffalano*, 727 F.2d 50, 54; *Sun Myong Moon*, 718 F.2d 1210, 1236; *United States v. Haldeman*, 559 F.2d 31, 115–16 (D.C.Cir. 1976), *cert. denied sub. nom. Erlichman v. United States*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). For example, intent to impede the administration of justice may be inferred by showing the defendant had knowledge or notice that his conduct would obstruct justice then being administered. *See Buffalano*, 727 F.2d 50, 53–54. Additionally, intent can be inferred from the fact the defendant should have reasonably foreseen that the natural and probable consequences of the success of his actions would obstruct justice. *See United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir.1984); *United States v. Neiswender*, 590 F.2d 1269, 1272–73 (4th Cir.1977), *cert.*

*denied,* 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979).

In the instant case, there is evidence which indicates Coomber was aware a grand jury investigation was in progress when he allegedly committed the overt acts charged. The effect of the false affidavit and the letter addressed to Goldsmith was to tend to mislead the grand jury that the purported aliases Rogers is alleged to have used during the period of the scheme were real persons, which was an issue of material importance in the investigation. Coomber asserts he did not actually intend that the grand jury receive these documents. Nevertheless, it can be inferred that Coomber could have known or foreseen the letter and the affidavit would be submitted to the grand jury and the probable consequence of his acts would be to impede the grand jury's investigation of the scheme.

The government also asserts that the Wetherly notes and reports were vital to the investigation because they proved the falsity of a report on a goldmine authored by Coomber in connection with the scheme. According to the government, Coomber contacted Wetherly in November 1982 to inform him the grand jury might subpoena his notes and report. Coomber allegedly requested that Wetherly give him the notes and the report so Wetherly could claim, in response to a subpoena, he had no notes or other writings pertaining to his evaluation of the goldmine. These allegations, if proven, would give rise to an inference Coomber intended to suppress the Wetherly notes and report so the grand jury could not obtain this inculpatory information. Thus, contrary to Coomber's assertion, the overt acts alleged do establish a basis for inferring Coomber intended to obstruct justice.

Coomber's motion to dismiss count XXII for insufficiency is denied for the reasons stated above.

## V. MOTION IN LIMINE—DEFENSE COUNSEL AS PROSECUTION WITNESSES

■ As stated above, count I of the superseding indictment charges Rogers with mail fraud. Paragraph 9(h) of count I alleges that, as part of the scheme to defraud, Rogers misappropriated and used funds invested in the IME gold mining ventures and that part of this money was paid to his attorneys. Additionally, paragraph 24 of count XXII alleges that Rogers requested, through his attorneys, that false affidavits be presented to the grand jury as part of the conspiracy to obstruct justice. The government has included Rogers' attorneys, Jeffrey Gordon and Pierce O'Donnell, in its list of witnesses for trial. Apparently, the government seeks to adduce evidence from Gordon and O'Donnell regarding the amount of attorney fees paid by Rogers and Rogers' submission of the allegedly false affidavits. Rogers has filed a motion *in limine* to preclude the government from calling his attorneys as prosecution witnesses in this case. It is asserted that his Sixth Amendment right to counsel will be denied if the government is permitted to call his attorneys as witnesses against him.

It is well-established that, under the Sixth Amendment, "[a]n individual brought to trial in a criminal case has an absolute right to counsel." *United States v. Rogers,* 602 F.Supp. 1332, 1348 (D.Colo.1985) (citing *Powell v. Alabama,* 287 U.S. 45, 66, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932)). The Sixth Amendment also protects the right to retained counsel of the defendant's choice. *Rogers,* 602 F.Supp. 1332, 1348. In the present case, if Rogers' attorneys were called as prosecution witnesses, they would be required to withdraw under the disciplinary rules which govern attorneys' conduct. *See* DR 5–102(B) (an attorney is required to withdraw from representation of a client if it is apparent that the attorney's testimony is or may be prejudicial to the client); *United States v. Badalamenti,* 614 F.Supp. 194, 199 (S.D.N.Y.1985). Thus, Rogers asserts that he will be denied his right to counsel in violation of the Sixth Amendment.

The government responds to this argument by stating it has "no desire" to call

Rogers' counsel as prosecution witnesses even though they have been listed as such. Rather, the government asserts it seeks only to introduce evidence regarding the amount of fees paid and the submission of false affidavits to the grand jury. To do this, the government has requested that Rogers stipulate to the amount of fees he has paid to his attorneys and to the fact he requested the affidavits be submitted to the grand jury. Since Rogers has declined to enter into such a stipulation, the government proposes that it will call bookkeepers for the attorneys' law firm to the stand to testify to the amounts paid for attorney fees. The government fails, however, to state how it will establish Rogers' involvement with the presentation of the allegedly false affidavits to the grand jury.

Despite the government's contention it has no desire to call defense counsel as witnesses, I find Rogers' Sixth Amendment right to counsel has been implicated by the government's listing of the attorneys as prosecution witnesses. The Sixth Amendment assures Rogers "the right to be free of unduly burdensome interruption of his counsel's trial preparation and protects him from *unnecessary* or arbitrary disqualification of his counsel." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 250 (2d Cir.1985) (en banc) (emphasis added). Any potential infringement of this right must only be as a last resort. Thus, so long as the government may present proof by other means, it may not call Rogers' counsel, or the law firm's bookkeepers, as witnesses. Unless the government can show precisely and with particularity that it has no other means of presenting evidence regarding the amount of attorney fees paid and submission of the affidavits, Rogers' Sixth Amendment right to counsel must prevail. Accordingly, Rogers' motion in limine is granted. I may, however, reconsider this decision if the government can show that it has no other means by which to adduce the subject evidence. Such reconsideration, of course, will place heavy emphasis on the provisions of Fed.R. Evid. 403.

## VI. MOTION FOR COLLATERAL ESTOPPEL

On October 30, 1980, the Securities and Exchange Commission (SEC) filed a complaint in the federal district court in California against Rogers and several other individuals and companies for injunctive relief under federal securities laws. *Securities and Exchange Commission v. Rogers*, No. CV 80–4841 MRP. The complaint in that case alleged the defendants were involved in a scheme to defraud, from 1978 through 1980, which is referred to as the IME Gold for Tax Dollars (GFTD) investment programs. The SEC further alleged, in connection with this scheme, the defendants sold unregistered securities, made fraudulent statements and omissions of material facts in offering materials, and failed to register as brokers and dealers. After a six-week trial, the court ruled in favor of Rogers and against the SEC on each allegation against Rogers. *Securities and Exchange Commission v. Rogers*, No. CV 80–4841 (C.D.Cal. March 1, 1985) (Findings of Fact and Conclusions of Law). The court found the SEC failed to prove Rogers: 1) committed fraud, 2) aided and abetted any fraud, 3) controlled IME or any other company connected with the offerings, 4) controlled any investor funds, 5) conceived, organized, promoted, or sold the offerings, 6) used aliases, or 7) acted negligently in connection with the IME GFTD scheme. *Id.*

Rogers has now filed a motion for collateral estoppel based upon the ruling in the SEC case. Rogers contends certain counts in the superseding indictment in the instant case charge him with the identical alleged scheme as that involved in the SEC case. It is asserted that collateral estoppel must be applied here and that counts I through IV, which charge Rogers with mail fraud in connection with IME, must be dismissed as these charges have already been litigated adverse to the government. Further, Rogers seeks dismissal of those portions of counts V through XV and XXII to the extent they incorporate or are based upon

issues previously raised and adjudicated in the SEC case.

The doctrine of collateral estoppel precludes relitigation of issues actually and necessarily decided in a prior action. *See Matter of Lombard*, 739 F.2d 499, 502 (10th Cir.1984); *see also United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Searing v. Hayes*, 684 F.2d 694, 696 (10th Cir.1982) (per curiam). The purposes underlying the doctrine of collateral estoppel are to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citing *Montana*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74). The Tenth Circuit has stated that collateral estoppel can only be applied to subsequent actions when

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Lombard*, 739 F.2d 499, 502 (citing *Peffer v. Bennett*, 523 F.2d 1323 (10th Cir.1975)).

Although rarely presented, it is well-established that "[f]indings against the government in a civil action may support preclusion in a subsequent criminal prosecution," 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4474 at 747–48, if the four requisites for collateral estoppel are met. *See Yates v. United States*, 354 U.S. 298, 335, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *United States v. Mumford*, 630 F.2d 1023, 1027 (4th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759,

68 L.Ed.2d 238 (1981) (unlike res judicata, the doctrine of collateral estoppel may be applicable when the first cause of action was civil and the second is criminal); *United States v. Abatti*, 463 F.Supp. 596, 598 (S.D.Cal.1978). However, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Abatti*, 463 F.Supp. 596, 600.

Both Rogers and the government have made extensive arguments regarding the requisites of collateral estoppel as they may apply in this case as well as policy considerations. I need not address these specific arguments, however, because I find the first requisite for the application of the doctrine has not been met. Review of the complaint and the court's ruling in the SEC case and comparison of the issues in that case with the superseding indictment in the present case reveals the issues are not identical. The SEC case focused on alleged violations of federal securities laws from 1978 to 1980. The offenses charged in the instant case allegedly did not occur until after that period. Although the overall scheme may be the same, the offenses charged in the superseding indictment are not the same as those litigated in the SEC case. Accordingly, Rogers' motion for collateral estoppel is denied.

## VII. MOTION TO DISMISS FOR GRAND JURY ABUSE

Rogers has filed a preliminary motion for dismissal based on abuse of the grand jury process and prosecutorial misconduct. Coomber has joined in this motion. This motion was deemed to be preliminary in nature because defendants did not have access to most of the grand jury transcripts. Since that motion was filed, defendants have requested, and I have granted, disclosure of all grand jury transcripts. Accordingly, ruling on this motion will be deferred to such time as defendants have obtained

and reviewed the transcripts and have filed a supplement to the motion to dismiss.

### VIII. MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

On April 8, 1982, Gunnar Wassmund, an inspector with the Ministry of Consumer and Corporate Affairs in Canada, searched Coomber's briefcase at the Vancouver airport and xeroxed the documents found therein. Coomber has moved to suppress this evidence as well as any statements he made at that time to Wassmund.

Coomber concedes that, ordinarily, an American citizen's privacy is not protected by the Fourth Amendment while in a foreign country and searches made by foreign agents are not subject to the exclusionary rule. *See United States v. Delaplane,* 778 F.2d 570 (10th Cir.1985). Coomber argues, however, that the two exceptions to this rule adopted by the Tenth Circuit in *Delaplane* apply in this case and, thus, the evidence and statements must be suppressed.

In *United States v. Hensel,* 699 F.2d 18, 25 (1st Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983), the First Circuit stated that there are two well-established exceptions to general rule that evidence seized by foreign agents need not be suppressed: "(1) where foreign police conduct 'shock[s] the judicial conscience,' ... and (2) where American agents 'participated in the foreign search, or ... [the foreign officers acted] as agents for their American counterparts....'" The Tenth Circuit recently adopted this language in *Delaplane. See* 778 F.2d 570, 573. Coomber argues both of these exceptions apply under the circumstances in this case. The government, however, disputes this contention. Since the facts needed to determine whether either of these exceptions applies are disputed, an evidentiary hearing must be held on this matter. Thus, I shall reserve ruling on Coomber's motion to suppress until such a hearing is held.

### IX. MOTION FOR INFORMATION REGARDING PRIOR MISCONDUCT AND CONVICTIONS

Coomber has filed a motion seeking prompt disclosure by the government of its intention to introduce any evidence in this case of any alleged misconduct, "bad acts", criminal conduct, or prior convictions not charged on the face of the indictment. Coomber requests this information in order to avoid surprise and trial delay as well as to permit investigation and discovery regarding any such potential evidence. Rogers has joined in this motion.

In its response, the government states it will disclose the information requested thirty days before trial in accordance with the discovery hearing report in this case. There being no objection, Coomber's motion is granted with the provision that the government shall disclose the information to both Coomber and Rogers thirty days before trial.

### X. MOTION TO STRIKE

Coomber has moved to strike certain allegations in the indictment which he asserts are superfluous or prejudicial. Rogers has joined in this motion.

█ First, Coomber requests all references in counts I through X to the IME and GEMSA programs as "schemes" be stricken. Coomber contends this characterization is superfluous, inflammatory, and unnecessary to a clear reading of the indictment. Coomber ignores, however, the fact that an essential element of mail fraud is a "scheme" to defraud. *See United States v. Curtis,* 537 F.2d 1091, 1095 (10th Cir.1976), *cert. denied,* 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976). An essential element cannot be deemed surplusage in an indictment. Thus, I decline to strike this language from the indictment.

█ Second, Coomber requests that any allegation or reference to injunctions issued by the SEC against Rogers in 1965 and 1977 be stricken since it is not alleged Coomber was aware of these injunctions and any reference to the injunctions would

be prejudicial. Coomber has not, however, demonstrated how this evidence would be prejudicial. Further, I have denied Coomber's motion for severance in this case. Thus, the motion is denied with respect to these allegations.

■ Third, Coomber requests all references to his allegedly false deposition testimony on February 16, 1982 be stricken. While I question the use of this evidence to support the conspiracy to obstruct justice charge, I have little doubt that it can be used to establish the existence of an alleged alias used by Rogers as part of the ongoing scheme. Coomber's motion to strike any reference to this deposition is therefore denied.

■ Finally, Coomber seeks an order striking any reference to the allegedly false affidavit which he signed on October 1, 1982. No grounds are stated as to why references to this affidavit should be stricken. I held above that this affidavit could be used to establish the conspiracy charge. Accordingly, I decline to strike references in the indictment to this affidavit.

## XI. MOTION FOR DISCLOSURE OF MAIL COVER

■ Pursuant to Fed.R.Crim.P. 16 and 39 C.F.R. § 233.3(h)(4), Lepone has moved for supplemental discovery concerning a mail cover which was used in the government's investigation. The government has responded by providing the information requested with respect to Lepone. Rogers has, however, joined in this motion and the government has not provided such information as to Rogers or otherwise responded to Rogers' request. The government shall provide such information to Rogers within twenty days of the date of this order.

IT IS THEREFORE ORDERED THAT:

1. Rogers' motion for disclosure of all matters occurring before the grand jury is DENIED as moot.

2. Rogers' motion for severance of counts XXII through XXVI is DENIED.

3. Coomber's motion for severance of counts I through IV and XXII through XXVI is DENIED.

4. Rogers' motion to dismiss count XI is DENIED.

5. Coomber's motion to dismiss count XI is DENIED.

6. Rogers' motion to dismiss counts XVI through XXI and XXIII through XXVI for insufficiency is GRANTED IN PART AND DENIED IN PART. Counts XVI through XXI are dismissed as to both Rogers and Coomber.

7. Coomber's motion to dismiss count XXII for insufficiency is DENIED.

8. Rogers' motion in limine to preclude the government from calling defense counsel as witnesses is GRANTED.

9. Rogers' motion for collateral estoppel is DENIED.

10. Ruling on Rogers' motion to dismiss for grand jury abuse and prosecutorial misconduct is deferred until such time as defense counsel gains access to the grand jury transcripts, reviews such transcripts, and files a supplement to the motion to dismiss.

11. Ruling on Coomber's motion to suppress is deferred until such time as an evidentiary hearing is held.

12. Coomber's motion for information regarding prior misconduct and convictions is GRANTED to the extent that the government shall provide the information requested to both Rogers and Coomber thirty days before trial.

13. Coomber's motion to strike is DENIED.

14. Lepone's motion for disclosure regarding mail cover is GRANTED. The government shall also provide the information requested to Rogers within twenty days of the date of this order.